## O'NEAL v. UNITED STATES.

### Civ. No. 40.

District Court, M. D. Georgia, Macon Division.

April 15, 1940.

Jones, Jones & Sparks, of Macon, Ga. (C. Baxter Jones and Chas. M. Cork, both of Macon, Ga., of counsel), for plaintiff.

T. Hoyt Davis, U. S. Atty., and T. Reese Watkins, Asst. U. S. Atty., both of Macon, Ga., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and J. Leonard Lyons, Sp. Assts. to Atty. Gen., for defendant.

DEAVER, District Judge.

Upon consideration of the pleadings and evidence in this case, the court makes the following findings of fact:

1. Plaintiff resides within the Macon Division of the Middle District of Georgia; defendant is the United States of America.

2. Plaintiff timely filed a federal income tax return for the calendar year 1936 reporting a gross income of $35,618.25 itemized as follows:

| | |
|---|---|
| 3. Interest on bank deposits, notes, corporation bonds, etc.... | $2,048.60 |
| 4. Interest on tax free covenant bonds.... | 1,490.00 |
| 6. Dividends ....... | 31,276.07 |
| 9. Rents and royalties | 903.77 |
| 10. Capital loss........ $100.19 | |

3. Deductions taken on the return amounted to $4,029.60, which amount includes the sum of $242.50 representing attorneys' fees, $683.42 representing office expenses, stationery, stamps, printing, etc., $33 representing safety deposit box rent, $24.05 representing exchange and collection charges, and $6 representing traveling expenses business.

4. Thereafter, the Commissioner of Internal Revenue disallowed the deduction of the sum of $242.50 for attorneys' fees and $683.42 as office expenses, stationery, stamps, printing, etc. This resulted in a deficiency in tax of $227.86, which amount, together with interest of $22.39, was assessed by the Commissioner and was paid by the plaintiff on November 17, 1938. The Commissioner, however, allowed the deduction of the sum of $33 for safety deposit box rent, $24.05 for exchange and collection charges and $6 for traveling expenses business.

5. The attorneys' fees which the Commissioner disallowed, and which are here in question, were paid for the following services: $37.50 for preparing state and federal income tax returns, $100 paid as retainer fee for the calendar year. The amount of $683.42, which the Commissioner disallowed and which is here in question, represented office expenses paid by the plaintiff. Total office expenses were paid directly by the plaintiff's son, who was reimbursed by the plaintiff in an amount representing the proportion of the total office time and facilities attributable to the plaintiff's use of the office. The proportion was arrived at by agreement between plaintiff and his son.

6. Plaintiff filed a timely claim for refund for the amount involved in this action, namely $210.94, claiming that the deductions mentioned in the preceding paragraph were improperly disallowed.

7. Plaintiff's entire taxable income, with the exception of $903.77, was derived either from dividends or from interest on securities in which plaintiff had invested. The amount of $903.77 was received as rent upon a brick garage located in Cordele, Georgia.

8. The plaintiff in the taxable year was seventy-eight years of age. He had retired from one business about the year 1903 and subsequently had gone back into various businesses, some of which he actively ran. For about 15 or 20 years prior to 1936 and during the year 1937 he had no business other than that of managing, conserving and enhancing his estate. During the year 1936 he was a director and a large stockholder in the Bibb Manufacturing Company and a director and the owner of 200 shares of stock in the Citizens & Southern National Bank, Macon Branch.

9. Prior to the year 1936 plaintiff had established four trusts whose assets consisted in part of 1900 shares of the Bibb Manufacturing Company. As grantor of the trusts he reserved only the right as to this stock expressed in the following language of the trust instruments: "No sale of any of said property and no investment or reinvestment of any sums now or hereafter in the hands of the trustees shall be made, except upon his written instruction."

It does not appear that the trustees at any time sold any of the stock of Bibb Manufacturing Company.

10. Plaintiff during the year 1936 attended the meetings of the directors of both companies regularly when he was in Macon, which was most of the time. The directors of the local branch of the Citizens & Southern National Bank met once a week on Friday and directed the affairs of the bank in an advisory capacity.

11. Plaintiff, during the year 1936 and for six or seven years previously, shared offices with his son who was engaged in the investment and securities business.

12. Plaintiff used the office regularly except at such times as he was out of town. He would come to the office every day, keeping no regular hours but staying sometimes a considerable length of time and sometimes only a while.

13. While at the office plaintiff would consider investment problems, making decisions as to what steps should be taken in connection with his investments, and he would either personally or through his son attend to his correspondence and the keeping of his records. The correspondence which the plaintiff with the assistance of his son carried on with business associates and business houses was extensive and was of such a nature as required the acts of a stenographer and the use of an office.

14. Both plaintiff and his son kept themselves informed as to market conditions and matters pertaining to the plaintiff's investments. In this connection plaintiff would go to the office of a stockbroker every day.

15. All changes in the plaintiff's investments were made at his direction. Although he frequently consulted his son as to the advisability of making a change, his son exercised no independent judgment concerning plaintiff's affairs.

16. The management of plaintiff's affairs constituted on a proportionate basis more than fifty per cent of the total use of the office which he shared with his son although his son was engaged in the investment securities business. In spite of this fact, the amount which plaintiff and his son agreed upon as the amount which plaintiff should reimburse the son was less than fifty per cent of the rent and stenographer's salary.

17. During the time plaintiff shared offices with his son, 1931–1936, plaintiff made changes in his investments, although the changes would not be considered extensive

in proportion to the gross amount of his estate and although he did not jump in and out of the market. Plaintiff gave close attention to whether or not there should be changes.

18. During the taxable year plaintiff owned stock in the following companies and received dividends in the following amounts:

| | |
|---|---|
| American Bakeries | $ 1,895.25 |
| Georgia Power Company | 862.50 |
| Bibb Manufacturing Company | 3,416.00 |
| J. C. Penney Company | 950.00 |
| Reynolds Tobacco Company | 1,200.00 |
| Dupont de Nemours | 152.50 |
| Maytag Company | 450.00 |
| Vick Chemical Company | 720.00 |
| Dinkler Hotel Company | 50.00 |
| General Motors Corporation | 1,800.00 |
| U. S. Gypsum Company | 60.00 |
| Continental Gin Company | 1,125.00 |
| Coca-Cola Common | 9,600.00 |
| Coca-Cola International | 2,965.00 |
| Coca-Cola International A | 1,200.00 |
| Coca-Cola Class A | 1,605.00 |
| Humble Oil & Refining Company | 37.50 |
| International Nickel Company of Canada | 90.00 |
| General Electric Company | 300.00 |
| Hackensack Water Company | 675.00 |
| Standard Oil of New Jersey | 300.00 |
| Atlantic Steel Company | 1,000.00 |
| First National Stores Corporation | 100.00 |
| Dupont de Nemours | 24.32 |
| Citizens & Southern National Bank | 120.00 |
| Bank of Thomson | 568.00 |
| Bank of Thomson Warehouse | 10.00 |
| Total | $31,276.07 |

Of the above listed stocks the Coca-Cola stock was worth approximately $400,000 and the Bibb Manufacturing Company stock was worth approximately $68,000 to $77,000.

19. During the taxable year plaintiff made the following sales of stock involving a total cost basis of $11,769.47 upon which a capital net loss of $100.19 was realized:

1. 8 shares acquired May 1, 1935, and sold for $187.02, resulting in a profit of $111.52.

2. 25/55 share of General Motors acquired January 2, 1936, as a dividend on Dupont de Nemours stock already held by taxpayer and sold January 6, 1936, for $21.72 resulting in a loss of $2.60.

3. 100 shares Texas Gulf purchased in 1934 at a cost of $3,516.40, resulting in a deductible loss of $62.38.

4. 100 shares acquired in 1928 for $5,003.33 resulting in a loss of $133.37.

5. 9 shares acquired in 1928 at a cost of $968.40 resulting in a loss of $9.36.

6. 2 bonds of Warren County acquired in 1928 which were redeemed during the taxable year and which resulted in a deductible loss of $4.

The transactions did not run as low in dollar volume in any other year and the comparatively small volume just happened to fall in the taxable year.

20. Plaintiff kept his books in the office. They consisted of a single entry set of books, a day book and a book listing his investments. Plaintiff's securities were kept in safety deposit boxes rented by the plaintiff for that purpose.

21. There is no evidence to show and no contention was made that plaintiff received any tax-exempt income other than $700 of interest on tax-exempt bonds.

22. The claimed deductions here in question were ordinary and necessary expenses.

23. During the taxable year plaintiff was engaged in the business of managing, conserving and enhancing his estate.

### Conclusions of Law.

1. The court has jurisdiction of the parties and the subject matter.

2. In order to allow deduction of safety deposit box rent, exchange and collection charges, and traveling expenses, the Commissioner must have found that plaintiff was carrying on a trade or business and that finding was correct. During the taxable year 1936 plaintiff was engaged in the business of managing, conserving, and enhancing his estate.

3. The expenditures here in question were deductible as necessary expenses of carrying on plaintiff's business.

4. The Commissioner improperly disallowed plaintiff's claim for refund.

5. Plaintiff is entitled to judgment.